[Civ. No. 1797. First Appellate District.—December 28, 1916.]

## F. A. LEVY et al., Trustees, etc., Respondents, v. SAMUEL DUSENBERY, Appellant.

ACTION FOR SERVICES—EXCHANGE OF REAL ESTATE—PLEADING—UNCERTAINTY AS TO TIME OF PERFORMANCE—EVIDENCE—LACK OF PREJUDICE.—In an action for services performed in bringing about an exchange of real properties, the defendant is not prejudiced by any error in overruling his demurrer to the complaint for alleged uncertainty as to whether the services were performed within the time limited by the contract of employment, where he had the benefit of his own testimony and the contract itself to rebut the testimony of the plaintiff on the subject.

ID.—TRUE DATE OF EXCHANGE AGREEMENT—PAROL EVIDENCE ADMISSIBLE.—In such an action parol evidence is admissible to prove that the agreement of exchange was signed and procured on the day preceding the day written therein.

ID.—CONTRACT OF EMPLOYMENT—PAYMENT UPON CONSUMMATION OF EXCHANGE—CONSTRUCTION.—A contract agreeing to pay a sum of money as commissions for services ren'dered in procuring an exchange of real estate, "upon the consummation of the exchange," has reference not to the final exchange of deeds, but to the execution and delivery of a binding contract for their exchange.

ID.—EXCHANGE AGREEMENT—TIME FOR EXAMINATION OF TITLE—DELIVERY OF PROPERTIES FREE OF ENCUMBRANCES—LIABILITY FOR COMMISSIONS UNAFFECTED BY.—A provision in the exchange agreement allowing thirty days for examination of title, and requiring delivery of the respective properties clear of encumbrances, does not make the liability to pay the commission dependent upon the taking place of the actual exchange of deeds within thirty days from the date of the agreement.

ID.—BROKER'S COMMISSION—WHEN EARNED.—In case of an agreement for an exchange of properties, when time is given to examine the titles, the giving of such time does not affect the agent's right to his commission, although it might affect the time of its payment. His right to the compensation is fixed by the production of a person able, ready, and willing to purchase upon the conveyance of good title.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Edgar T. Zook, Judge presiding.

The facts are stated in the opinion of the court.

Vogelsang & Brown, for Appellant.

Herbert Choynski, and John T. Williams, for Respondents.

KERRIGAN, J.—This is an appeal by defendant from an adverse judgment in an action brought in the name of Watson, Pond & Riddle (a corporation), the present plaintiffs being afterward substituted for them, for the recovery of one thousand two hundred dollars for services claimed to have been performed for the defendant in bringing about an exchange of real estate in San Francisco.

It appears from the evidence that from time to time during a period of more than a month prior to October 25, 1909, F. W. Thurston, the accredited representative of Watson, Pond & Riddle, had been endeavoring to effect an exchange of certain properties between the defendant and Mrs. Emma Siminoff, with the result that on October 24, 1909, the defend-

ant and that lady arrived at an understanding as to the terms of the proposed exchange, and Thurston was directed to prepare an agreement embodying them.    Accordingly, the next day Thurston prepared in duplicate a written agreement of exchange and two contracts of employment, one to be signed by Mrs. Siminoff and the other by the defendant, whereby the parties to the exchange agreed to pay to Watson, Pond & Riddle a commission of one thousand three hundred dollars. On said October 25th Thurston called at the office of the defendant and submitted to him the proposed exchange agreement and the contract of employment.    Defendant objected to a certain part of the former, and also reduced the amount of commission payable by him to the sum of one thousand two hundred dollars, made it payable in installments, and conditional "upon the consummation of the exchange of properties within twenty-four hours from date."    Thereupon Thurston took the two copies of the proposed agreement of exchange and the contract of employment to Mrs. Siminoff; and after he explained to her the part of the agreement to which defendant had objected she consented to the modification, and that evening signed it in duplicate.    She also at the same time signed the contract of employment prepared for her, whereby she agreed to pay Watson, Pond & Riddle a commission of one thousand three hundred dollars.    The following morning, October 26th, when both copies of the exchange agreement were handed by Thurston to the defendant for his signature, he signed them and inserted therein the figures and letters "27th" as a part of the date of the instrument.    Both copies of this agreement having thus been signed by the parties, Thurston left one copy with the defendant and late that afternoon delivered the other to Mrs. Siminoff.

The contract of exchange recited that Mrs. Siminoff and the defendant were the owners of certain pieces of real property in San Francisco subject to certain mortgages, and bound the respective parties to mutually convey good and sufficient title to their properties, free from encumbrances except those mentioned therein.    The contract also contained a provision that "Both parties hereto hereby agree to allow thirty days from the date hereof for the search of title on their respective properties."    The defendant thereafter interposed various objections to the consummation of the sale, claiming that the property of Mrs. Siminoff in certain respects had been misrep-

resented to him; but it appears that the objections and claim of misrepresentations were without substantial foundation. However, during the discussions between the parties thus arising the defendant proposed to Mrs. Siminoff that they terminate the contract and enter into a new one, but she refused to do so, insisting that the contract already entered into be performed; otherwise there would be no further negotiation. The exchange of deeds was made about a month after the expiration of the thirty days provided in the contract for examination of title.

The first point made by the appellant for a reversal is that his special demurrer to the complaint on the ground of uncertainty and ambiguity should have been sustained. The complaint had pleaded the employment of the plaintiff without setting up its exact terms, followed by an averment that the procurement of the agreement of exchange under said employment was had on October 27, 1909. The point of the special demurrer was that it could not be ascertained from the complaint whether the plaintiff's services had been performed within the time limit set therefor.

Whether or not the demurrer was well taken, we are satisfied from an examination of the record that the appellant was not prejudiced by the ruling in question. The appellant was thoroughly informed of the date of the plaintiff's employment, of the time limit set therefor, and of the fact that the exchange agreement constituting the plaintiff's performance was dated October 27th, which was one day after the expiration of plaintiff's authority. At the trial it was testified on behalf of the plaintiff that, although the exchange agreement bears the date of October 27th, it was actually signed and procured on the preceding day, thus proving it to be, if such testimony were believed by the court, to be within the time limit of the employment. The defendant met this testimony by categorically testifying that the 27th was the true date of the execution of this document and that it was not signed or delivered before. He thus had the instrument itself and his own testimony in its support; and he could have had no more if the complaint had specifically averred October 26th as the date of procuring the instrument. No other testimony upon this point was introduced by the plaintiff. The court chose to believe the plaintiff's version; but such result was not attributable to any disadvantage suffered by the defendant

through ambiguity or uncertainty of the complaint. In the absence of such prejudice an order erroneously overruling a special demurrer will not constitute ground for reversal. (*Bank of Lemoore* v. *Fulgham*, 151 Cal. 234, 237, [90 Pac. 936]; *Alexander* v. *Central L. & M. Co.*, 104 Cal. 536, [38 Pac. 410]; *Krieger* v. *Fenny*, 14 Cal. App. 538, 544, [112 Pac. 901].)

After the trial the court permitted an amendment to the complaint to conform to the proof, and accordingly an "amended and supplemental complaint" was filed, to which the defendant demurred, whereupon the plaintiff immediately filed a "second amended and supplemental complaint." Defendant's demurrer to this last pleading was also overruled by the court; and what we have just said as to the overruling of the demurrer to the complaint will also dispose of the objections now urged by the appellant to this second adverse ruling.

Equally without merit, we think, is the contention that the evidence introduced by the plaintiff to show that the true date of the exchange agreement was inadmissible in the absence of an issue of mistake or fraud. The plaintiff was not a party to the contract between defendant and Mrs. Siminoff; and it is only as to parties to a contract that the rule may be invoked that parol evidence is not admissible to vary its terms. (*Dunn* v. *Price*, 112 Cal. 46, [44 Pac. 354]; *Christenson Lumber Co.* v. *Buckley*, 17 Cal. App. 37, [118 Pac. 466].) But even if the plaintiff had been a party to it, still the evidence was correctly received, for parol evidence is always competent to show the true date of a written instrument. (*Treadwell* v. *Reynolds*, 47 Cal. 171; *Gately* v. *Irvine*, 51 Cal. 172; *Erickson* v. *Robertson*, 116 Minn. 90, [Ann. Cas. 1913A, 493, 37 L. R. A. (N. S.) 1133, 133 N. W. 165]; *Lee* v. *Massachusetts F. & M. Ins. Co.*, 6 Mass. 208; *Moore* v. *Smead*, 89 Wis. 558, [62 N. W. 426].)

Coming now to a construction of the broker's contract, it reads in part as follows: "I hereby agree to pay you the sum of $1,200 as commissions for services rendered upon the consummation of said exchange of properties, *within 24 hours from date, and payable $100 down and $100 per month.*" The portion underscored was added by the defendant in his own handwriting at the time he signed the contract. It is quite apparent to us—and we do not understand it to be seriously contested—that the words, "consummation of said ex-

change of properties," as used in this writing refer not to the final exchange of deeds, but to the execution and delivery of a binding contract for their exchange; for it could not have been within the contemplation of the defendant that the actual exchange of properties could be effected within the twenty-four hours, as the agreement of exchange itself provided that thirty days should be allowed each party to examine title, and there were other matters to be investigated and adjusted which would require more than a single day.

The next and main contention of the appellant is that, even assuming that the plaintiff procured the exchange agreement within the time limited therefor, the defendant's liability to pay the specified commission was still dependent upon the further condition that the actual exchange of deeds should take place within thirty days from the date of the agreement for exchange; and this by virtue of the clause contained therein reading: "Both parties hereto hereby agree to allow thirty days from the date hereof for the search of title on their respective properties, and both parties hereby agree to deliver their respective properties free and clear of all encumbrances except as hereinbefore mentioned." It is pointed out by the appellant that the properties were not exchanged until a day or two over a month after the lapse of the thirty-day period, and that therefore the broker had failed to produce a purchaser "ready, willing and able to purchase" within the rule entitling a broker to his commission; in other words, that the broker's contract not only required him to procure the agreement of exchange within the twenty-four hours, but also imposed upon him the obligation to insure the completion of the exchange within the thirty days mentioned in the exchange agreement.

We cannot agree with this construction. As we read the agreement, no time is therein provided within which the actual exchange of deeds must take place. The thirty-day period specifically refers to the time allowed for examining title; and it is a matter of common knowledge in real estate transactions that some period of time between that allowed for such examination and the actual close of the transaction almost always intervenes. When the contract is silent on that point a reasonable time will be allowed.

Moreover, the question, in our opinion, does not arise in the present case, since the plaintiff's right to recover his compen-

sation did not depend upon the actual closing of the transaction. If the party with whom the plaintiff contracted for an exchange of properties had good title it was immaterial to the broker's right to recover his compensation whether the exchange was ever effected or not. He had, by procuring the signing of the exchange agreement by Mrs. Siminoff, produced a purchaser "ready and willing," and the remaining requirement of "ability" was evidenced by the fact that her title proved to be good. Not only so, but the plaintiff accepted it, and the exchange was effected on the terms stated in the agreement.

And further, even if the thirty-day period referred to the time that the exchange was required to be consummated, the failure of the parties to comply with that condition would be immaterial to the plaintiff's right to recover. He had produced a purchaser ready and able to purchase, and who in fact did purchase. The only element of time on which the plaintiff's compensation was contingent was that contained in his written employment; and the cases cited by the appellant in support of the contention we are now considering are all cases dealing with the time limit of the broker's authorization to procure a purchaser, and not with any limitation contained in a contract entered into by buyer and seller as the result of the broker's efforts.

Generally speaking, when there is nothing in the broker's contract making his right to compensation depend upon some contingency, a broker employed to sell real property as a rule has earned his commission when, within the life of his contract or any extension thereof, he has produced a person who is ready, willing, and able to purchase the property on terms satisfactory to the seller, and has obtained a binding and valid contract for a sale on the terms proposed by the seller, or has brought the seller and buyer together and thus enabled them to enter into a contract of sale. (*Shepherd-Teague Co.* v. *Hermann,* 12 Cal. App. 395, [107 Pac. 622].) In such a case it would make no difference that the contract of sale provided for a time to search the title to the property. The agent's right to compensation would accrue, unless otherwise provided by the terms of his employment, when the contract of sale was executed, or when the opportunity to make such contract was given the seller, in which event the agent would be entitled to his commission even if the seller had no title

or defective title to the property. (*Phelps* v. *Prusch,* 83 Cal. 626, [23 Pac. 1111].)

So in the case of an agreement for an exchange of properties, when time is given to examine the titles as in the present case, the giving of such time does not affect the agent's right to his commission, although it might affect the time of its payment. His right to the agreed compensation would be fixed by the production of a person "able, ready and willing" to purchase by the conveyance of good title. It is, of course, true that there arise cases in exchanges of property where the broker may be entitled to recover from one party and not from the other. In the case of an agreement for the purchase of properties between A and B, brought about by a broker under valid employment, the broker's right to compensation from A is not affected by the inability of A to convey good title, but is affected by B's inability, since the conveyance of good title by B is the price that A is to receive for his property, and without it the broker has not produced a purchaser able to purchase. And similarly as to the broker's right to compensation from B, it is unaffected by B's inability to pass good title, but is affected by A's inability. (*Connor* v. *Riggin,* 21 Cal. App. 756, [132 Pac. 849].) In the present case the question is set at rest by the fact that the title of Mrs. Siminoff proved to be good and was accepted by the appellant.

This disposes of the points meriting detailed discussion, and for the foregoing reasons the judgment is affirmed.

Lennon, P. J., and Richards, J., concurred.