CALWELL ET AL. *v.* BANKERS TRUST COMPANY.

[No. 16,821. Filed March 13, 1943. Rehearing denied April 30, 1943. Transfer denied May 19, 1943.]

*Ralph K. Kane, Gideon W. Blain* and *Robert Hollowell, Jr.,* all of Indianapolis, for appellants.

*Binkley & Baker* and *Clyde H. Jones,* all of Indianapolis, for appellee.

ROYSE, J.—This is an action by appellee against appellants for damages for breach of an option contained in

a written lease, by the terms of which the appellee was given an option to purchase for the sum of $1,000 a boiler installed by appellants on the property which was the subject of the lease, and for damages for breach of a covenant to return the property in as good a condition as when received, ordinary wear and tear excepted, and for attorney fees for necessary services in seeking to enforce the terms of the lease.

The issues were formed by appellee's complaint, the answer of appellants in two paragraphs, the first paragraph being a general denial and the second by way of set-off and counterclaim, and the reply of general denial by appellee to appellants' second paragraph of answer. Upon the issues thus joined the cause was tried by the court without the intervention of a jury. Finding and judgment of the court for appellee on the complaint that appellee recover of appellants the sum of $3,310, and finding for appellee on appellants' second paragraph of set-off and counterclaim.

The errors assigned in this court are the overruling of the first, second and third paragraphs and each of said paragraphs of appellants' motion for a new trial. The causes assigned in this motion in each of said paragraphs are: (1) The decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law; (3) error in the assessment of the amount of recovery, in that the same is too large; (4) the damages awarded by the court are excessive.

The complaint, in substance, after showing the right of appellee to institute this action, alleges that on the 27th day of April, 1928, the Cornell Realty Company, a corporation, owned certain described real estate in Marion County which it, on said date, by a written lease, leased to the defendants (appellants) for a period of eight years and eight months from the first day of

May, 1928; that thereafter, on or about December 18, 1929, the said Cornell Realty Company sold said real estate and in writing assigned said lease to one Frank C. Lory who subsequently transferred said real estate under the terms of a trust to appellee; that after the death of said Lory, plaintiff (appellee) as such trustee came into possession of said real estate and ever since has held same as such trustee; that prior to the expiration of the written lease the parties entered into an oral agreement and understanding, by the terms of which, upon the payment of a monthly rental, said lease and all of its terms and conditions was extended from month to month without any specific date of expiration. It is further alleged that at the time the defendants (appellants) went into possession under the terms of said lease, there was in said building a boiler for generating steam for heating the leased premises and other parts of the building, and also a large smoke stack used in connection with said boiler, and under the terms of the lease the defendants (appellants) had the privilege of replacing the boiler in the building with a new and larger one and they might use the old boiler for other purposes; also, by the terms of this lease, plaintiff (appellee) was given the option to purchase such new boiler, if installed, for $1,000 at any time before the expiration of the lease; that after the defendants went into possession under said lease they did install a new and larger boiler; that prior to the expiration of said lease, as extended, and without any notice to the plaintiff and without giving the plaintiff the right to purchase said boiler, etc., the defendants wrongfully and in violation of the terms of said lease removed said new boiler and left said building without any boiler or heating plant.

It is further alleged that the defendants (appellants),

while in possession of said building and after the installation of the boiler, installed a smoke stack which was anchored to said building, and that the defendants unlawfully removed said smoke stack. It is further alleged that the defendants unlawfully damaged the leased building in removing the boiler therefrom by placing large cables or other equipment over the roof of said building without installing braces; that in removing said boiler they pulled out the door casings and portions of the wall, damaged the ceiling over the boiler room where said boiler was installed, and caused numerous holes to be made in the walls and door and window frames of the building; that two large trenches were cut in the cement floor of the building and were not properly filled in, and defendants did not repair the windows, walls or ceiling in said building at the time they surrendered possession thereof, and they did not return the building in as good a condition as received, ordinary wear and tear excepted.

The complaint further alleges that under the terms of the lease plaintiff (appellee) is entitled to attorney fees and that it has performed all of the conditions on its part to be performed, and prays judgment for $8,000 and $1,000 attorney fees.

The lease is as follows:

"This Indenture made this 27th day of April, 1928, by and between Cornell Realty Company, a corporation organized under the laws of the State of Indiana, hereinafter referred to as lessor, and Harry G. Calwell and Paul Calwell, a partnership organized under the laws of the State of Indiana, and doing business under the name of the Pilgrim Laundry, hereinafter called lessee. Witnesseth:

"1. That, for and in consideration of the rents hereinafter agreed to be paid by said lessee, said lessor has leased and demised and does hereby lease and demise to said lessee for a period of eight (8)

years and eight (8) months from May 1, 1928 to December 31, 1936 the entire first floor less the space occupied by the Graham Asbestos Company and the approaches to their space, and also less the space for the approaches to Charles C. Carr Company's elevator, this space to be used jointly by lessee and the Charles C. Carr Company, unless and until such joint use is found not satisfactory to lessee, then on demand by lessee the lessor agrees to at once within ten days after receiving a written request from lessee to build a partition from a door opening on Eleventh Street making a passage of approximately 6 to 8 feet wide leading to said elevator and if and when said passage is built, the same shall be enclosed with wire screen so that it may be locked for protection to lessee, and it is also agreed that lessor shall provide for the locking of elevator door for similar protection to lessee and also for protection to Charles C. Carr Company. It is agreed by lessor that if the above arrangement of separate passage is found necessary and that if it is found impractical to lessee to leave the stairway in its present location, that the lessor will at his own expense build a stairway on the outside of building to provide a fire escape for upper floors.

"2.   That as rent for said space, said lessee agrees to pay:  $200.00 per month for 1 year, $225.00 per month for 1 year, $250.00 per month for 2 years, $275.00 per month for 2 years and $300.00 per month for 2 years and 8 months. Said rents to be paid monthly in advance on the first day of each month until December 31, 1936 without relief from valuation or appraisement laws. Said rents to be paid to the Cornell Realty Company at No. 709 W. Washington Street, Indianapolis, Indiana, or at such other place as Lessor may from time to time in writing direct. That at the expiration of this lease, or on failure to pay rent when due or to comply with any of the terms of this lease to be complied with by lessee, lessor at his option may cancel said lease and enter upon said premises for the purpore of repossessing same without in anywise being a tresspasser; that lessee agrees to use said premises lawfully and well, and to give peaceable possession of same at the end of

this lease, and to pay all attorney's fees in enforcing any of the terms of this lease.

"3. That lessor shall provide in all, three toilets for use of lessee at some point to be mutually agreed upon with two lavatories and one drinking water faucet adjoining lavatories.

"4. That in case said premises shall be damaged by fire or other casualty, lessor agrees to repair same as promptly as possible; and in case the damage renders said premises unfit for lessee's use, it is agreed that rents shall be abated during such period until all repairs shall have been completed. If said repairs shall not have been completed within ninety (90) days after such damage, then it is agreed that lessee may cancel this lease without further obligation to lessor.

"5. That said premises shall be used for a laundry, and that this lease shall not be assigned or said premises sublet to any business more hazardous than lessee's business without the written consent of lessor, and the lessee hereby guarantees to protect the lessor against any liens or any claims made against lessor's property for any expense connected with leased premises of whatsoever nature or character.

"6. That lessee shall save lessor harmless from all claim of loss or damage by accident occurring on said demised premises or resulting from lessee's use thereof.

"7. Lessee shall have the use of power and light lines in leased space.

"8. Windows and doors to be put in good condition by lessor and also cement the floor where damaged in the northeast room.

"9. Lessor agrees to keep in repair the Sprinkler System, roof, walls, window frames and doors, downspouts and gutters, and lessee agrees to replace all broken windows during its tenancy, and take care of all other interior repairs.

"10. It is further stipulated, understood and agreed that the lessee may replace the present boiler which supplies heat for the building and put in a new and larger boiler, and that the lessee is permitted to use the old and replaced boiler for

other purposes, and at the expiration of this lease the lessor has the option to pay the lessee one thousand ($1,000.00) dollars for the boiler and connections installed and paid for by lessee, or on failure to pay One Thousand ($1,000.00) Dollars for the installed boiler, then lessor hereby gives permission to lessee to remove said boiler and lessee agrees to put back in good condition any part of building damaged by such removal and lessee further agrees to return the herein leased premises in as good condition as received ordinary wear and tear excepted.

"Signed in duplicate this 27th day of April, 1928.

> "Cornell Realty Company,
> By: L. J. Borinstein, President.

" (Seal)
Attest: Isaac Marks, Secretary.

> Pilgrim Laundry,
> By: H. G. Calwell,
> By: Paul Calwell.

"State of Indiana ⎱ ss:
 County of Marion ⎰

Before me a Notary Public in and for said County and State, this 27th day of April, 1928, personally appeared L. J. Borinstein, President, and Isaac Marks, Secretary of the Cornell Realty Company, and Harry G. Calwell and Paul Calwell, a partnership, and for and in behalf of their respective corporation and partnership acknowledged the execution of the foregoing lease.

> Herbert E. Barker, (Seal)
> Notary Public.

My Commission expires Mar. 22, 1929."

To the complaint the defendants (appellants) answered in two paragraphs, the first paragraph being a general denial, and the second by way of off-set and counterclaim. The allegations of the off-set and counterclaim are, substantially, that under the terms

of the lease the plaintiff (appellee) agreed to keep in repair the Sprinkler System, roof, walls, window frames and doors, down-spouts and gutters on said building, and to put said windows and doors in good condition, to cement the floors where damaged in the northeast room, and that plaintiff (appellee) failed and refused to comply with these provisions of the contract, and that defendants (appellants) were compelled to and did repair the floor; that by reason of plaintiff's (appellee's) failure to keep said Sprinkler System in proper repair, said system leaked and caused water to run through the floors of said building and to damage the property of the defendants (appellants), causing great expense and inconvenience in conducting their business; that by reason of the failure of plaintiff to maintain the roof, gutters and down-spouting, they were put to large expense and their machinery was damaged, which caused additional expense and unnecessary work; that there were no locks on the windows and doors, and that defendants had to place locks on the doors and windows; that there were large quantities of trash and debris in said building when the defendants took possession, which they had to remove at their expense, and that the defendants were not permitted to remove from said building, when they surrendered possession thereof, certain meter valves on the water line and a heater. Said off-set and counterclaim further alleges that by reason of these facts defendants (appellants) sustained damages of approximately $3,000.00.

It is agreed by both parties that the question of whether the boiler was personal property, a trade fixture, or became a part of the real estate, is to be determined by the intention of the parties as expressed in the written agreement. It is admitted by both parties that the old boiler was inadequate

for appellants' business of operating a laundry. There was some evidence it did not properly heat the building. We are of the opinion that clause 10 of the lease unmistakably indicates that it was the intention of the parties to regard the new boiler installed by lessee as personal property. *Adams* v. *Tully* (1905), 164 Ind. 292, 73 N. E. 595; *Brown* v. *Corbin et al.* (1890), 121 Ind. 455, 23 N. E. 276; *Workman* v. *Henrie* (1928), 71 Utah 400, 266 P. 1033. This being true, appellants had the right to remove the boiler subject, only, to any restriction to such right which may have been created by said clause of the lease.

This leads to a consideration of the effect of the option contained in this clause. The option gave to appellee the privilege of retaining the new boiler if it elected so to do, pursuant to certain specific terms and conditions. To obtain the benefit of this privilege it was incumbent on the appellee, *prior to the expiration of the lease,* to pay to appellants the sum of $1,000. In an option where the time of its duration is specified, time is of the essence of such an agreement. 12 Am. Jur. 547. The written lease in the instant case expired December 31, 1936. Appellee did not, by said date, perform the obligation necessary to obtain for it the privilege of retaining the new boiler. Therefore, appellee forfeited its right under the option, unless the option was renewed.

The evidence is undisputed that some time prior to the expiration of the written lease the appellant Harry Calwell and an officer of appellee entered into an oral agreement by which the lease was extended in all its terms and conditions except as to the time it was to terminate, and this was agreed to be on a month to month basis. Pursuant to such agreement appellants continued in possession of the

premises until on or about April 30, 1937. Appellants earnestly contend that this agreement did not constitute a renewal of the option clause in the lease, but was merely a holding over and therefore the privilege granted by the option expired December 31, 1936. The cases cited by appellants in support of this contention are not applicable to the facts in this case. The agreement extending the terms of the lease was not in contravention of § 1 of the Statute of Frauds (§ 33-101, Burns' 1933, § 8363, Baldwin's 1934) pertaining to leases of real estate, nor was it in contravention of § 5 of said Statute of Frauds (§ 33-105, Burns' 1933, § 14781, Baldwin's 1934) relating to contracts for the sale of personal property of the value of more than $500, for the reason that an option to purchase goods is not a contract of sale within the meaning of this section. 27 C. J. 236; *Nagel* v. *Cohen et al.* (1908), 112 New York Supp. 1066.

We therefore hold that the terms of the written lease, including the provisions of clause 10 of said lease, were continued in force on a month to month basis. If appellee desired to avail itself of the privilege of retaining the boiler, it had the duty of paying to appellants the sum of $1,000 before the expiration of the lease which, under the terms of the renewal agreement, was on the last day of each month.

The undisputed evidence shows that when appellants paid the rent for the month of April, 1937 to an employee of appellee, they informed said employee they would give up the building at the end of the month. The evidence further shows that subsequently, during said month of April, one of appellee's officers saw a sign on another building in another part of the city saying it would be the new home of appellants' laundry. It is further admitted by appellee

that it did not pay or tender to appellants the sum of $1,000 to obtain the privilege of retaining the boiler, as provided in the option, nor did appellee visit the premises or make any effort to in any manner communicate with appellants until some few days after May 1, 1937. The appellants had vacated the premises prior to May 1st. Under the terms of the renewal agreement, the option expired April 30, 1937 and appellants were entirely within their right in removing the boiler. An entirely different situation might have been presented if appellee had, on or before April 30th, gone to the leased premises and found the boiler had already been removed.

Appellee further contends that even if appellants had the right to remove the new boiler they were required to replace the old boiler. We do not believe the ██ provision of clause 10 sustains this contention. Under the plain provisions of this clause, appellants, if they saw fit to install a new boiler, were permitted to use the old and replaced boiler for other purposes. It is further provided that in the event appellants removed the boiler, under the terms of the lease they were to "put back in good condition any part of the building damaged by such removal." We find nothing in this lease which made it the obligation of appellants to return or re-install the old boiler. Appellants had started to replace the damage done to the building in removing the boiler but were stopped by appellee who charged the work was not being properly performed. Whether or not appellee was justified in this was a question of fact for the determination of the trial court.

The award of damages by the trial court was not allocated to the specific items set out in the complaint, but in view of the large amount of damages assessed,

we are convinced the trial court made a substantial allowance in its finding for the removal of the boiler. This was error. In the oral argument appellee's counsel conceded if appellants had the right to remove the boiler the award of the trial court was excessive.

Since the judgment herein must be reversed, we do not deem it necessary to pass on other errors assigned, for it is not likely that they will occur on a re-trial of this case.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

· NOTE.—Reported in 47 N. E. (2d) 170.