Richard J. BOND and Janet A. Bond, Appellants (Defendants Below),

v.

PEABODY COAL COMPANY, Appellee (Plaintiffs Below).

No. 4–981A124.

Court of Appeals of Indiana, Fourth District.

June 29, 1983.

Robert P. Doolittle, Jr., Emison, Emison, Doolittle & Kolb, Vincennes, for appellants.

Thomas C. Gray, Gray Stratton & Gray, Petersburg, for appellee.

MILLER, Judge.

Richard J. Bond and Janet A. Bond (the Bonds) and Peabody Coal Company (Peabody) are before this court on cross-appeals from a summary judgment in the Bonds' favor which ordered foreclosure of an underground coal option entered into between the parties. By the terms of a January 24, 1975 option agreement, Peabody was given a four-year option to purchase the underground coal located beneath certain real estate owned by the Bonds, along with attendant rights to mine and remove such coal. The parties also agreed that upon

giving notice of its election to purchase under the option, Peabody would have a reasonable time to examine the abstract of title to the Bonds' property, and if such examination showed the Bonds to have merchantable title, Peabody would then "forthwith" pay the purchase price and the Bonds would deliver a deed conveying the coal and other rights.

During the fourth year of the option, Peabody exercised its option, but the Bonds refused to deliver a deed, claiming Peabody took an unreasonable time to close the transaction. After a summary judgment proceeding, the trial court agreed with the Bonds, but apparently relying on *Skendzel v. Marshall,* (1973) 261 Ind. 226, 301 N.E.2d 641, and the fact that Peabody had paid 75 per cent of the purchase price, ordered the parties to proceed as in a foreclosure action.

Because we find that a genuine issue of material fact remains as to the reasonableness of the time period used by Peabody in its title examination, we reverse and remand for a trial on the merits.

### ISSUES

The parties in their briefs argued the following issues:

The Bonds assert the trial court erred:

1) in determining Peabody had acquired a substantial equity in the property interest involved,

2) in ordering foreclosure after finding Peabody's delay in paying the purchase price was unreasonable and the option should be declared forfeit,

3) in ordering foreclosure when neither party requested this remedy;

4) in appointing a commissioner to supervise the foreclosure proceedings.

Peabody claims the trial court erred:

1) in granting the Bonds' motion for summary judgment and refusing Peabody's motion after construing the contract language "[g]rantee shall forthwith pay the purchase price" to signify the parties' intent to make time of the essence in its performance

(a) when contract language governing performance after exercise of the option merely specified a reasonable time for title examination, and

(b) when the Bonds had not given clear, unequivocal and express notice of an intent on its part to make time of the essence in the payment of the purchase price.

### FACTS

Many of the facts involved in the instant case, as revealed by the materials and evidence presented in the summary judgment proceeding, are undisputed. By the terms of a January 24, 1975 "Underground Coal Option" agreement, the Bonds agreed that upon demand on or before January 24, 1976, they would sell and convey to Peabody "all coal and other minerals mixed with coal" in and under certain Knox County, Indiana property, together with the right to mine and remove the above-described minerals.[1] The agreement contained a 4-year renewal clause which stated the option could be renewed from year to year for four years by Peabody's payment of one fourth the balance due to the Bonds on or before January 24 of the current option year. The contract specified that unless renewal payments were made before January 24, the option would become null and void. The contract also stipulated that Peabody had an exclusive right to enter for exploration and testing, as well as the right to proceed in Bond's name in any proceedings necessary to cure title defects in the property. Peabody's election of its right to purchase the coal rights was governed by the following provision of the contract:

"Upon [Peabody] giving notice of its election to purchase said coal and other rights, the [Bonds] shall within thirty (30) days thereafter deliver to [Peabody] an abstract of title to said premises showing merchantable title of record in the [Bonds] and *[Peabody] shall have a reasonable length of time thereafter to examine the same. If such examinations*

---

1. The Bonds reserved the rights to any oil and gas under the property.

*shows merchantable title of record in the [Bonds], [Peabody] shall forthwith pay the purchase price to the [Bonds]* and the [Bonds] shall make, execute, stamp and deliver to [Peabody] a statutory Warranty Deed conveying said coal and other rights appurtenant thereto as hereinafter provided, to [Peabody]. If such examination of title does not show merchantable title of record, [Peabody] shall notify the [Bonds] of any existing defects, if any, and the [Bonds] shall forthwith do all things necessary to correct such defects, if any. In case the [Bonds do] not correct such defects, if any, as above set forth, [Peabody] may, at its election, proceed to correct such defects on behalf of the [Bonds] and the reasonable costs thereof shall be applied upon and as a part of the purchase price hereinstated."

The agreement also provided that in the event Peabody elected to purchase, all payments made for the option and its renewal were to be credited to the purchase price.

Peabody made renewal payments on or before January 24 of 1976, 1977 and 1978, paying a total of $31,501.00 of the purchase price of $41,682.00. On December 18, 1978, Gilmer W. Tucker, a Peabody agent, gave Richard Bond formal written notice of its election to purchase and requested that Bond make the arrangements for delivery of those abstracts necessary for the completion of a title opinion on the land. There is conflicting evidence as to the contents of the parties' conversation at this December 18 meeting. The Bonds claim Richard Bond informed Tucker he expected payment of the remainder of the purchase price before January 24, 1979, as he had a commitment for the funds. According to Peabody's version, Bond merely asked whether payment would be made by January 24, and Tucker answered that payment would be forthcoming after the completion of the prerequisites to a normal real estate closing.

On December 22, 1978, Bond delivered complete abstracts to Tucker who, in turn, delivered them, after the Christmas and New Year's holidays, to Peabody's attorney on January 2, 1979, for the rendering of a title opinion. The next contact between the parties occurred on February 2, 1979, when Bond called Tucker to inquire when he would receive the balance of the purchase price. Tucker told him payment would be made when the attorney's title examination was complete. This was accomplished February 22, 1979, and on March 2, 1979, Tucker called Bond to set up a closing date. Bond told Tucker he was not interested in closing and that he had instructed his attorney to notify Peabody of the Bonds' intent to declare the option null and void because of the allegedly unreasonable length of time Peabody had delayed in paying the purchase price. On March 7, 1979, Peabody agents met with Bond and attempted to tender payment. Bond, however, declined to accept the tender, and Peabody then sued for specific performance on March 27, 1979. After brief discovery, the cause was set for determination on cross motions for summary judgment. The judge held a hearing and took evidence, after which he granted Bond's motion. In doing so, he entered the following conclusions of law:

*"Conclusions of Law*

1. Whether the deed and check were tendered in a reasonable time becomes a matter of law under the facts and circumstances of this case.

2. Although the words of art 'time is of the essence' are not used in this case, the contract specifies in part '. . . Grantee shall forthwith pay the purchase price . . .' which is nearly equivalent.

3. The delay in this case is unreasonable and the option contract should be declared forfeited.

4. Plaintiff has paid at least 75% of the purchase price. This is not a case of abandonment. The Grantee has obtained a substantial equity in the option. The appropriate remedy in this cause should be foreclosure instead of forfeiture. Grantor should have the remedy of Deficiency Judgment and a lien on the property interest for any Judgment. Grantee should receive any appreciation in value.

5. A Commissioner should be appointed to proceed in a foreclosure proceedings

in this cause and distribute proceeds of any sale pursuant to Indiana Law as to foreclosure proceedings.

*Wherefore it is considered, ordered, and adjudged* that Defendants' Motion for Summary Judgment be granted. That Plaintiff's Motion for Summary Judgment be overruled. That Plaintiff pay the costs herein. That the parties be given 30 days to agree on a Commissioner who shall have authority to select his Attorney and that said Commissioner proceed as provided by law." (Record 94–95).

Thereafter, both the Bonds and Peabody filed motions to correct errors which were denied and now form the basis for the present appeal.

## DECISION

We reverse on the issue raised by Peabody and conclude the grant of summary judgment in favor of the Bonds was incorrect under the circumstances herein presented. Further, because of the strong likelihood that the issues raised by the Bonds will appear upon remand of the case, we will briefly discuss the nature of Peabody's interest in the coal rights as well as the proper remedy herein.

*Propriety of Summary Judgment*

To preface our discussion on this issue, we recite the standard of review we must use in our consideration of a trial court grant of summary judgment, as recently set forth in *Barnd v. Borst,* (1982) Ind.App., 431 N.E.2d 161:

"We have stated many times that motions for summary judgment are properly granted only when the pleadings and other matters of record reveal that there is no genuine issue or dispute as to a material fact and that the moving party is entitled to judgment as a matter of law.... To determine whether such issues exist, the court must accept as true those facts alleged by the nonmoving party and resolve all doubts against the moving party.... The granting of a motion for summary judgment is not appropriate if the trial court must weigh conflicting

evidence to reach a decision, ... or even if there are conflicting inferences which may be drawn from undisputed facts. 'However, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute or conflict regarding a fact that is dispositive of the litigation.' Moreover, on appeal, all reasonable presumptions will be indulged in favor of the rulings and judgments of a trial court, and no presumptions will be indulged in favor of an appellant to sustain his alleged error. The burden of proving reversible error is on the appellant...." (Citations omitted.)

431 N.E.2d at 164–65.

In examining the facts of the instant case, we note that the parties' cross-motions for summary judgment were supported by the pleadings as well as certain answers to interrogatories, responses to requests for admissions and affidavits. The trial court held a hearing and received testimony from Gilmer Tucker and Richard Bond. Thereafter, it granted summary judgment for the Bonds, concluding there was no issue of material fact relevant to the issues of this case. We disagree with this conclusion. Our examination of the record convinces us that a significant factual issue remains concerning the timeliness of Peabody's actions which makes summary judgment inappropriate.

It is apparent from the conclusions of law rendered by the trial court that its holding as to reasonableness of the time period involved was based on its acceptance of Bonds' argument that the parties intended that time would be of the essence in the payment of the purchase price, which would be due on January 24, 1979. This view is supported by the trial court's Finding of Fact No. 4:

"4. On December 18, 1978, Defendants notified Plaintiff that payment was expected on January 24, 1979. On February 2, 1979, Defendants inquired of Plaintiff's agent as to why payment had not been made. On March 2, 1979, Defendants notified Plaintiff in writing that De-

fendants did not intend to be bound by the option for non-payment of purchase price."

and by its Conclusion of Law No. 2:

"2. Although the words of art 'time is of the essence' are not used in this case, the contract specifies in part '. . . Grantee shall forthwith pay the purchase price . . .' which is nearly equivalent."

▉ The grant of summary judgment on the ground that time was of the essence would only have been proper if the trial court found as a matter of law that the parties affirmatively regarded time to be of the essence after proper exercise of the option—that is, that Peabody and the Bonds agreed time to be of the essence, either by 1) the terms of the instrument or 2) by uncontroverted evidence of circumstances establishing that the parties intended time as the controlling element of the agreement. *Northern Illinois Coal Corp. v. Cryder*, (1935) 361 Ill. 274, 197 N.E. 750; *see also Burnett Coal Mining Co. v. Schrepferman*, (1921) 77 Ind.App. 45, 133 N.E. 34.[2] We conclude that neither situation exists here.

### A. Terms of the Contract

By its Conclusion of Law No. 2, the trial court indicated that while the parties had not expressly made time of the essence, the contract stated Peabody would "forthwith pay the purchase price" which, in the trial court's estimation, is "nearly equivalent." The portion of the contract governing performance after acceptance of the option states:

"Upon [Peabody] giving notice of its election to purchase said coal and other rights, the [Bonds] shall within thirty (30) days thereafter deliver to [Peabody] an abstract of title to said premises showing merchantable title of record in the [Bonds] and [Peabody] shall have a reasonable length of time thereafter to examine the same. If such examinations shows [sic] merchantable title of record in the [Bonds], [Peabody] shall forthwith pay the purchase price to the [Bonds] and the [Bonds] shall make, execute, stamp and deliver to [Peabody] a statutory Warranty Deed conveying said coal and other rights appurtenant thereto as hereinafter provided, to [Peabody]."

▉ The legal construction given to the word "forthwith" when used in a contract or statute is that the act referred to should be performed "within such convenient time as is reasonably requisite." *Martin v. Pifer*, (1884) 96 Ind. 245, *see also National Live Stock Insurance Co. v. Simmons*, (1916) 62 Ind.App. 15, 111 N.E. 18 (where act to be performed is giving of notice, terms such as "immediately" or "forthwith" do not call for instantaneous action, but indicate rather that notice shall be given within such time as is reasonable in view of the circumstances); *Provident Life Insurance & Investment Co. v. Baum*, (1867) 29 Ind. 236 ("forthwith" in insurance notice situation is not to be taken literally, but instead means with due diligence or without unnecessary procrastination or delay under all the circumstances of the case). Ordinarily, question of whether the act has been performed

---

2. Here, while the Bonds argue the payment of the purchase price was necessary for the exercise of the option, a cursory reading of the contract terms reveals that notice of election to purchase was stipulated as the act constituting exercise of the option. Tender of the contract price is not a condition precedent to exercise of an option unless the contract expressly requires such payment. *Bagwell v. Henson*, (1971) 124 Ga.App. 92, 183 S.E.2d 485; *Northcutt v. McPherson*, (1970) 81 N.M. 743, 473 P.2d 357; *see also Coons v. Baird*, (1970) 148 Ind.App. 250, 265 N.E.2d 727. While the general rule is that time is of the essence in the *exercise* of an option where the contract granting the option specifies the time of its duration,

*Calwell v. Banker's Trust Co.*, (1943) 113 Ind. App. 345, 47 N.E.2d 170, such exercise of the option converts the option arrangement into an executory contract of sale and purchase. 3 American Law of Mining, Title XV, § 15.5 (1981); *Tyler v. Tyler*, (1942) 111 Ind.App. 607, 40 N.E.2d 983; *Smith v. Tomlin*, (1936) 102 Ind.App. 103, 1 N.E.2d 297. The option then is merged into a contract of sale and purchase, and the performance of further obligations is governed by general principles of vendor-purchaser law. 3 American Law of Mining, *supra*. Time is no longer of the essence unless expressly made so by the parties. *Id.; see Burnett Coal Mining Co. v. Schrepferman, supra*.

"forthwith" is a question of fact to be determined by the trier of fact. *Id.*

In this regard, we also observe that while the contract provides that payment shall be made "forthwith," it is silent as to the time for performance. Courts in other jurisdictions have held that a contract provision which states time is of the essence is ineffective when, as here, no date of performance is specified. 91 C.J.S. *Vendor and Purchaser,* § 104 (1955), and cases cited therein.

It is also apparent that the court and the Bonds interpreted the time period between the exercise of the option (December 18, 1978) and the tender of the purchase price (March 7, 1979) as a single period, the court determining 76 days was too long as a matter of law. In fact, the contract provides for *two* time periods between election to purchase and tender of the purchase price: during the first period, Peabody was granted a "reasonable time" for title inspection; during the second period, which began after the favorable title opinion was rendered, Peabody was required to close the transaction "forthwith." As we noted earlier, the abstracts were delivered December 22, 1978, and the written title opinion was rendered February 22, 1979. Eight days later, Peabody's agent Tucker called the Bonds to set a time for closing.

■ It seems obvious to this court that when Peabody made its offer to close a mere eight days after receiving the favorable title opinion, it was acting during that short period in an expeditious manner and proceeding to "forthwith pay the purchase price" in accordance with the terms of the contract. Indeed, one court has noted that it is a matter of common knowledge that some time almost always intervenes in real estate transactions between title examination and closing. *See Levy v. Dusenbery,* (1916) 32 Cal.App. 411, 163 P. 231.

Thus, the only question remaining before the trial court was whether the initial examination of the abstract was completed within a reasonable time. Insofar as the Bonds were the parties asserting that the time period used was unreasonable, the burden was on them to prove the time period used to be unreasonable. However, they presented no evidence on the issue of what a reasonable time period for title examination would have been under the circumstances. Indeed, the only reference in the evidence as to what the Bonds considered a reasonable time period for this activity occurs in a March 15, 1979 letter from the Bonds' attorney to Peabody's attorney, apparently admitted into evidence at the summary judgment proceeding, wherein the Bonds' attorney asserts:

> "The abstract was prepared by a qualified and skilled abstracter and it could easily have been examined, opinions rendered, and the closing documents prepared within a period of 30 or 40 days of its receipt. We note in the option agreement that the Grantor was given 30 days within which to deliver an abstract. We believe that this provision defines the scope of reasonableness."

(Record 124). We also note Peabody's attorney offered the following explanation as to the period of time he used:

> "[Peabody] denies that it failed or refused to complete payment of the consideration provided for by the underground coal option, but rather that the period between December 18, 1978, and March 7, 1979, was a reasonable period of time considering that said period of time included the Christmas and New Years holidays; that during said period of time, the undersigned, attorney for plaintiff, relocated his law offices and was sick for a period of ten (10) days; that during said period of time, four (4) extensive abstracts of title were examined and a title opinion based upon said examination was prepared; that during said period of time legal documents, namely, a coal deed, affidavit of title and possession, and partial release of mortgage were prepared, ... that during said period of time, said title opinion was reviewed by plaintiff and the final payment check was issued from St. Louis, Missouri, on March 2, 1979."

(Record 119, Response to Interrogatory No. 13 submitted by the Bonds.)

Generally, the question of what constitutes a reasonable time within which to perform an act is one for the trier of fact and depends on the particular facts, including the subject matter of the contract, the situation of the parties and the circumstances attending performance. *Albright v. Hughes,* (1940) 107 Ind.App. 651, 26 N.E.2d 576; *see also Jay Clutter Custom Digging v. English,* (1979) Ind.App., 393 N.E.2d 230. In view of the parties expressed disagreement as to what compromised a "reasonable time" for title examination under the facts presented, we conclude summary judgment was inappropriate here.

B. *Parties' Subsequent Conduct as Establishing Time to Be of the Essence*

The trial court's conclusion that time was of the essence in the contract might have been based in part on its factual finding regarding a December 18, 1978 conversation wherein Richard Bond allegedly told Peabody agent Gilmer W. Tucker that he expected payment of the purchase price before January 24, 1979. However, the parties admit in their briefs that their respective versions of that conversation differ. As noted earlier in our discussion of the facts, Peabody asserted Bond merely asked whether payment would be made before January 24, 1979, and Tucker responded that payment would be forthcoming after prerequisites to a normal real estate closing were completed. The Bonds claimed Richard Bond told Tucker he would expect payment before January 24, 1979, as he had a commitment for the money at that time.[3]

We noted in our discussion of the contract terms that the agreement did not specify a date for performance. It is also clear from the evidence that even under the Bonds' version of the conversation, Tucker did not unequivocally agree to a closing date of January 24, 1979.[4]

We acknowledge there is authority that the Bonds were not required to wait indefinitely for the closing and thus, after what they considered to be a reasonable time had passed, they could, by notice, fix a reasonable time for performance thereby placing a time limit on their own liability. *Boldt v. Early,* (1904) 33 Ind.App. 434, 70 N.E. 271; *Schneider v. Warner,* (1975) 69 Wis.2d 194, 230 N.W.2d 728. Such was not the case here, however. The time period assertedly fixed by Bond was designated before Bond delivered the abstracts and at a time when Peabody was under no duty to proceed. Further, the contract specified a reasonable time for closing and the Bonds had no authority to unilaterally change the terms of the agreement. *See Myers v. Maris,* (1975) 164 Ind.App. 34, 326 N.E.2d 577; 6 I.L.E. *Contracts* § 191 (1958).

Finally, we observe that the trial court in its summary judgment determined that the action should be converted into a foreclosure procedure. Without addressing the legal propriety of this action, we find it to be a costly and cumbersome procedure,

---

3. We observe that the judge made a finding of fact as to the substance of the December 18, 1978, conversation. It is obvious here that this finding attempted to resolve a conflicting fact issue and was therefore inappropriate in this summary judgment proceeding. It is proper for a trial court to give its reasons for the judgment, however, *Celina Mutual Insurance Co. v. Forister,* (1982) Ind.App., 438 N.E.2d 1007. The trial court may appropriately make a finding that no genuine issues of material fact exist and list those facts which it feels are without conflict as established by the record. The trial court's statement as to its reasons affords the parties an opportunity to address the merits of the trial court's rationale on appeal and aids the appellate court in its review. *Fort Wayne Patrolman's Benevolent Ass'n v.*

*City of Fort Wayne,* (1980) Ind.App., 408 N.E.2d 1295.

4. It is stipulated by the parties that Richard Bond's testimony regarding the conversation was as follows:

"Bond stated to Tucker that he expected the purchase price to be paid on or before the termination of the option on January 24, 1979. Tucker stated that he would make every effort to complete the transaction by that time provided that the abstractor was able to complete his work in a short period of time. Tucker stated that he would need the abstract right away in order to get the title work started."

not warranted under the circumstances of this case. It is recognized that a court of equity, when confronted with an action for specific performance, may determine all the rights of the parties to the subject matter involved and make such final disposition as will afford the parties complete relief. McClintock on Equity, § 52 (2d ed. 1936). Thus, in the event the court here finds Peabody took a longer period for performance than reasonable (although it seems that Peabody has presented some explanation for any alleged delay), it should, as an exercise of Solomonic decision-making, grant specific performance to Peabody, but provide additional relief, e.g. interest, to the Bonds in order to "equalize any losses occasioned by the delay by offsetting them with money payments." *North v. Newlin,* (1982) Ind.App., 435 N.E.2d 314, 319, *quoting Greenstone v. Claretian Theological Seminary,* (1959) 173 Cal.App.2d 21, 29, 343 P.2d 161, 165.

Reversed and remanded for a trial on the proceedings.

YOUNG, P.J., and CONOVER, J., concur.